[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 24, 2007
THOMAS K. KAHN
CLERK

No. 06-13063
Non-Argument Calendar
_____

D. C. Docket Nos.
03-08003-CV-AR-S
95-00091-CR-AR

ROY MACK WEST,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(April 24, 2007)

Before BIRCH, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Roy Mack West, a federal prisoner serving a 400-month sentence on a drug conspiracy conviction, appeals the district court's order denying his 28 U.S.C. § 2255 motion to vacate, set aside, or correct his sentence. We granted a certificate of appealability ("COA") on the following issue: "Whether the district court erred in failing to hold an evidentiary hearing on the following claims: (a) whether appellant's trial counsel was ineffective for representing him despite having a conflict of interest; and (b) whether appellant's trial counsel was ineffective for inadequately advising him of his speedy trial rights?"

On appeal, West argues that he was entitled to a hearing on his claim of ineffective assistance of counsel because one of his attorneys suffered from a conflict of interest and his attorneys failed to inform him of his right to a speedy trial. West also argues that the district court erred in including the affidavit of one of his attorneys, Robert French, in the materials reviewed and considered in denying West an evidentiary hearing. The government filed a motion to dismiss West's issue regarding the affidavit, as outside the scope of the COA. We DENY the government's motion to dismiss, but because West has failed to show an actual conflict between him and his attorney and has failed to show that he was prejudiced by the execution of a speedy trial waiver, we AFFIRM the denial of West's § 2255 motion.

2

# I. BACKGROUND

A federal grand jury indicted West for engaging in a continuing criminal enterprise ("CCE"), in violation of 21 U.S.C. § 848 (Count One), and for conspiracy to possess with intent to distribute and distribution of marijuana, cocaine, and methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(a)(1) (Count Two). On 4 May 1995, the government filed a motion to continue the trial until 7 August 1995, due to (1) its anticipation of seeking a superseding indictment that would more clearly define for the court the pending charges in the case; (2) its need for more time to compile documentary evidence and discovery materials; and (3) defense counsel's anticipated need for additional time to file responsive motions.

On 26 May 1995, West filed a waiver of his speedy trial rights until 7 August 1995. The court granted the motion for a continuance and set the trial for 7 August 1995. The jury convicted West of both counts, and the court sentenced him to life imprisonment on the CCE conviction, merged the drug conspiracy count with the CCE count, and then vacated the drug conspiracy conviction pursuant to United States v. Nixon, 918 F.2d 895, 908 (11th Cir. 1990). At the sentencing hearing, West agreed with the district court that he had been well represented during the trial.

On direct appeal, we affirmed his sentence and conviction, but the Supreme Court vacated the judgment and remanded for further consideration in light of Richardson v. United States, 526 U.S. 813, 119 S. Ct. 1707 (1999) (establishing a higher standard of proof in CCE cases). United States v. West, 142 F.3d 1408 (11th Cir. 1998), judgment vacated, 526 U.S. 1155, 119 S. Ct. 2042 (1999). On remand, we vacated West's CCE conviction and remanded the case to the district court with instructions to reinstate West's vacated drug conspiracy conviction and resentence him. United States v. West, 201 F.3d 1312 (11th Cir. 2000) (per curiam).

The district court reinstated West's conviction on the drug conspiracy count and resentenced West to 400 months of imprisonment on that count. West appealed his conviction and sentence, and we affirmed in an unpublished opinion. United States v. West, 264 F.3d 1145 (11th Cir. 2001) (per curiam).

West filed the present § 2255 motion alleging, in relevant part, that he received ineffective assistance of counsel from his three attorneys, G. Douglas Jones, Richard Jaffe, and Robert B. French, and that he was not properly advised of his speedy trial rights. French submitted an unsworn statement in support of the government's response, asserting that he was one of three attorneys representing West in regards to West's 1995 conviction. Prior to his representation of West,

4

French was under investigation by the U.S. Attorney's Office for the Northern District of Alabama. French stated that he understood that he was either the target of an indictment or there was a secret indictment outstanding against him. Although he was not certain about the subject of the investigation or secret indictment, he was occasionally told that the investigation involved illegal drugs, interfering with a federal investigation, and falsifying identification documents. He did not know exactly when the investigation ended. Robert McGregor, Assistant United States Attorney for the Northern District of Alabama, informed French during French's first appearance on behalf of West that French was no longer under investigation. French informed West of the investigation and the fact that Jaffe and Jones, who were also representing West, had represented him during the investigation. French spent approximately ten hours interviewing West and more than 300 hours in preparation for West's defense and his appeal. French stated that the waiver of West's right to a speedy trial was done "more for the defense than for the government[,]" as he needed more time to investigate, locate, and interview numerous, geographically-dispersed witnesses. R7-317, Exh. C at 4; R8-2 at 4.

On 31 March 2006, two days after French's notarized affidavit was filed, the district court denied West's § 2255 motion without holding an evidentiary hearing.

5

The court, among other things, relied on French's notarized statement and found that there was no actual conflict of interest in the case because French was told at his first court appearance with West that the government's investigation of him had been closed. Additionally, the court found that there was no evidence that West's attorneys had interests that were inconsistent with his. In regard to West's claim that he was not adequately advised of his speedy trial rights, the court concluded that, even assuming that West had no understanding of what his rights were, his attorneys were not deficient in advising him to waive those rights. Specifically, the court found that it was in West's best interest to waive his speedy trial rights, and that West had not shown any prejudice as a result of the waiver of those rights. As a result, the court denied West's requested habeas relief. Construing West's notice of appeal as a COA motion, the district court denied a COA because he had failed to make a substantial showing of the denial of a constitutional right. We, however, issued a COA on the following question:

> Whether the district court erred in failing to hold an evidentiary hearing on the following claims: (a) whether appellant's trial counsel was ineffective for representing him despite having a conflict of interest; and (b) whether appellant's trial counsel was ineffective for inadequately advising him of his speedy trial rights?

## II. DISCUSSION

On appeal, West argues that the district court erred in failing to hold an

6

evidentiary hearing on his ineffective assistance of counsel claims. According to West, his attorneys were deficient when they failed to inform him that Jones and Jaffe were representing French in an investigation led by the same office that was prosecuting West. West contends that the investigation of French could have given rise to a conflict of interest, and French did not adequately advise him of his speedy trial rights. The government responds that West has not shown that there was an actual conflict, as French disclosed to West the fact that he was under investigation, and, in any event, any actual conflict that may have existed ended well before trial. West could not show that his trial strategy was impacted in any way by the investigation. With respect to West's claim that he was not properly advised of his speedy trial rights, the government argues that West has failed to show prejudice as to this claim because the waiver of his speedy trial rights was executed in part to provide the defense with sufficient time to prepare for trial.

West argues that because French's statement was not sworn or made under penalty of perjury, it had no evidentiary value. Additionally, West contends that the failure to disclose to the trial court the existence of French's investigation or that Jones and Jaffe were representing French in that matter precluded any knowing and intelligent waiver of being represented by attorneys who had a clear conflict of interest. West contends that he was adversely affected by this conflict

of interest because no plea negotiations took place, and his attorneys offered no defense other than attempting to impugn the credibility of adverse witnesses. He analogizes his case to United States v. McLain, 823 F.2d 1457 (11th Cir. 1987), overruled on other grounds, as recognized in United States v. Watson, 866 F.2d 381, 385 n.3 (11th Cir. 1989), in which we found that an attorney's conflict of interest adversely affected his efforts to negotiate a plea bargain on behalf of his client. On 29 March 2006, French filed a notarized copy of his 2003 statement. Apparently, West nor his counsel were served with this notarized statement; his appellate brief states that the when the notarized statement was filed there was no certificate of service.

A. Scope of the COA/Motion to Dismiss

As a threshold matter, West has raised the issue of whether the district court erred by considering French's 2006 affidavit. Specifically, West argues that the district court erred by considering French's notarized affidavit filed on 29 March 2006, two days before it entered an order dismissing his § 2255 motion, as he was not served with a copy and did not have an opportunity to respond to it. The 2006 affidavit is otherwise identical to the statement French signed in 2003, except that the 2003 affidavit was not notarized. West received the 2003 statement but the 2006 affidavit was not properly served on West.

8

The COA does not address this issue. West maintains that the district court's consideration of the 2006 notarized, but unserved, affidavit is a procedural issue of the type that is encompassed by the COA, and that we must address before reaching the issue raised by the COA. The government disagrees, and has filed a motion to dismiss the appeal, arguing that this issue exceeds the scope of the COA.

Ordinarily, arguments outside the scope of the COA are not properly before us. See Murray v. United States, 145 F.3d 1249, 1251 (11th Cir. 1998) (per curiam). Nonetheless, we will read the COA to encompass "procedural issues that must be resolved before [we] can reach the merits of [a claim.]" See McCoy v. United States, 266 F.3d 1245, 1248 n.2 (11th Cir. 2001). Therefore, we construe the COA to encompass the issue of whether the district court erred by considering French's notarized statement, as the issues in the COA cannot be resolved without deciding whether the district court erred in considering West's affidavit. Accordingly, the government's pending motion to dismiss is DENIED.

As the district court ultimately denied West's § 2255 motion based on its implicit legal ruling that it could consider French's 2006 affidavit, we will review the issue of whether the district court erred by considering French's unserved affidavit de novo. See McCarthy v. United States, 320 F.3d 1230, 1231-32 (11th Cir. 2003) ("[W]e review a district court's findings of fact in a 28 U.S.C. § 2255

9

proceeding for clear error, and its legal conclusions <u>de novo</u>.") (citation and quotations omitted)).

It is undisputed that the government did not serve West with French's notarized statement and, thus, violated Federal Rule of Civil Procedure 5. <u>See</u> Fed. R. Civ. P. 5(a) (stating that "every pleading subsequent to the original complaint . . ., every paper relating to discovery required to be served upon a party . . ., every written motion other than one which may be heard ex parte, and every written notice, appearance, demand, offer of judgment, designation of record on appeal, and similar paper shall be served upon each the parties"); <u>see also</u> Rule 7(c) of Rules Governing § 2255 Habeas Corpus Proceedings ("The judge must give the party against whom the additional materials are offered an opportunity to admit or deny their correctness."). Accordingly, the district court erred by relying on the unserved 2006 affidavit.

Nevertheless, this error is harmless. <u>See</u> <u>United States v. Guzman</u>, 167 F.3d 1350, 1353 (11th Cir. 1999) (per curiam). French's 2006 notarized statement was identical to the statement French filed in 2003. West had three years to review its contents. Moreover, the record shows that West responded to the 2003 statement; in his reply to the government's response to his § 2255 motion, West argued that French's 2003 statement had no evidentiary value because it was not sworn or

10

made under penalty of perjury. Thus, such error is harmless and we will consider French's 2006 affidavit. The government's motion to dismiss is DENIED.

B. Evidentiary Hearing on Conflict of Interest Claims

We review a district court's denial of an evidentiary hearing for an abuse of discretion. See United States v. Lagrone, 727 F.2d 1037, 1038 (11th Cir. 1984) (per curiam). "When reviewing a district court's denial of a § 2255 motion, we review questions of law de novo and findings of fact for clear error." Varela v. United States, 400 F.3d 864, 867 n.3 (11th Cir.) (per curiam) (citation omitted), cert. denied, 126 S. Ct. 312 (2005).

"An evidentiary hearing is necessary whenever a habeas petitioner alleges facts that, if true, establish his or her right to relief." Agan v. Dugger, 835 F.2d 1337, 1338 (11th Cir. 1987). "A district court, however, need not hold an evidentiary hearing [on an ineffective assistance of counsel claim] if it can be conclusively determined from the record that petitioner was not denied effective assistance of counsel." See Smith v. Singletary, 170 F.3d 1051, 1054 (11th Cir. 1999) (citation omitted).

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel." Yarborough v. Gentry, 540 U.S. 1, 5, 124 S. Ct. 1, 4 (2003). The legal standard governing ineffective-assistance-of-counsel claims is

11

set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052 (1984). In

<u>Strickland</u>, the Supreme Court established a two-prong test for adjudicating such

claims. <u>Id.</u> at 687, 104 S. Ct. at 2064. First, a movant must show that counsel's

performance was deficient. <u>Id.</u> "The proper measure of attorney performance [is]

simply reasonableness under prevailing professional norms." <u>Id.</u> at 688, 104 S. Ct.

at 2065. "[C]ounsel is strongly presumed to have rendered adequate assistance"

and to have exercised "reasonable professional judgment." <u>Id.</u> at 690, 104 S. Ct. at

2066. Second, a movant must show that the deficient performance prejudiced the

defense. <u>Id.</u> To prove prejudice, a movant must show that there is a reasonable

probability that the outcome would have been different but for counsel's

unprofessional errors. <u>Id.</u> at 694, 104 S. Ct. at 2068. "It is not enough for the

defendant to show that the errors had some conceivable effect on the outcome of

the proceeding." <u>Id.</u> at 693, 104 S. Ct. 2067. Since both prongs of the test must be

met, the court is not required to decide both prongs if the defendant is unable to

meet one. <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000).

When an ineffectiveness claim is predicated on an alleged conflict of

interest, the petitioner must show that (1) defense counsel labored under an actual

conflict of interest; and (2) the actual conflict "adversely affected" the lawyer's

performance. <u>Lightbourne v. Dugger</u>, 829 F.2d 1012, 1023 (11th Cir. 1987) (per

curiam) (citations omitted).

Upon review of the record, and upon consideration of the briefs of the parties, we find that the district court did not abuse its discretion in refusing to hold an evidentiary hearing on West's ineffective assistance of counsel claim based on a conflict of interest, because he failed to show the existence of an actual conflict. In his affidavit, French stated that McGregor informed him at his first court appearance on behalf of West that his case was closed. Thus, it appears that any potential conflict of interest that may have existed ceased to exist at the time of French's first court appearance. Additionally, West has not alleged any conflict of interest that survived the conclusion of French's representation. In fact, after his conviction, West agreed with the district court's assessment that he had been well represented at trial. Further, although West argued in his § 2255 motion that he was entitled to a hearing based on McLain, this decision is factually distinguishable. There, we held that one of the defendants was deprived of a fair trial due to the misconduct of the prosecutor and the judge, as well as his attorney's failure to inform him that he was laboring under a conflict of interest because he was being investigated on bribery charges. McLain, 823 F.2d at 1461-64. We found that because there was evidence that the prosecutor would not indict the defendant's counsel until after the represented defendant's trial ended, there were

13

conflicting interests, which were manifested in the defendant's prolonged trial and lack of plea negotiations. Id. at 1464. Based on the compounded effect of the prosecutorial and judicial misconduct and the defendant's attorney's conflict, we reversed the district court's judgment and found that the defendants were denied their basic right to a fair trial. Id. at 1468.

Here, however, French advised West at the very early stages of the criminal proceeding of both the investigation and the fact that he was being represented by Jones and Jaffe. Also, at the time he first appeared on behalf of West, French was no longer under investigation. Accordingly, because McLain is factually distinguishable and West has failed to show an actual conflict of interest, the district court did not abuse its discretion in failing to hold an evidentiary hearing on this claim.

Similarly, West was not entitled to an evidentiary hearing on his claim of ineffective assistance of counsel for failure to inform him of his speedy trial rights. The record shows that the speedy trial waiver was executed, in large part, so that West's defense team could investigate, locate, and interview numerous, geographically-dispersed witnesses. More important, while West argues that forcing the government to trial could be a benefit to a defendant in a case of this magnitude, he has not alleged that the outcome of the trial would have been

14

different had West's attorneys not directed him to sign the speedy trial waiver. As such, there is nothing to demonstrate that West suffered any prejudice as a result of his waiver of his speedy trial rights.

### III. CONCLUSION

The government's pending motion to dismiss is DENIED. Additionally, as West has failed to show an actual conflict between him and his attorney, the district court did not abuse its discretion in failing to hold an evidentiary hearing on his ineffective assistance of counsel claim based on the alleged conflict of interest. Additionally, because West failed to show that he was prejudiced by the execution of a speedy trial waiver, the district court did not abuse its discretion in failing to hold an evidentiary hearing as to his ineffective assistance of counsel claim for the alleged failure to adequately inform him of his speedy trial rights. Accordingly, we **AFFIRM** the denial of West's § 2255 motion and **DENY** the government's motion to dismiss.